**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
| --- | --- |
| HERMAN MILLER, INC., | **Case No. 1:20-cv-6172-LLS** |
| *Plaintiff*, | |
| v. | **COMPLAINT** *for:* |
| | **(1) COUNTERFEITING** |
| MANHATTAN HOME DESIGN LLC, | **(2) DILUTION** |
| BARCELONA DESIGNS, and | **(3) INFRINGEMENT** |
| DANIEL JAVIER LEVY, | **(4) UNFAIR COMPETITION** |
| *Defendants*. | *Jury Trial Demanded* |

Plaintiff Herman Miller, Inc. ("Herman Miller"), by and through its attorneys, files this complaint for counterfeiting, dilution, infringement, and unfair competition against Defendants Manhattan Home Design LLC, Barcelona Designs, and Daniel Javier Levy.

## PARTIES

1.    Plaintiff Herman Miller, Inc. is a corporation organized and existing under the laws of the State of Michigan having a principal place of business at 855 East Main Avenue, Zeeland, Michigan 49464.

2.    Defendant Daniel J. Levy is an individual who, upon information and belief, has an address at 325 West 38th Street, New York, New York 10018.

3.    Upon information and belief, Manhattan Home Design LLC is a New York company with its principal place of business at 325 West 38th Street, New York, New York 10018. Manhattan Home Design operates a website at <<www.manhattanhomedesign.com>>.

4.    Upon information and belief, Barcelona Designs is a Canadian entity that purports to have an address at 4915 Bathurst St. Suite 209, Toronto, Ontario, Canada, M2R 1X9. Barcelona Designs operates a website at <<www.barcelona-designs.com>>.

5.     Upon information and belief, Barcelona Designs and Manhattan Home Design are subject to common ownership and control, including by Daniel J. Levy.

6.     Upon information and belief, at most or all times relevant to the claims herein, the actions of Manhattan Home Design and Barcelona Designs were directed and controlled by Defendant Levy.

7.     Upon information and belief, Manhattan Home Design and Barcelona Designs were acquired in December 2019 by Kardegian Group, and Martin Kardegian named their new CEO.

## JURISDICTION AND VENUE

8.     This is an action for trademark counterfeiting, dilution, and infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and 1125(c); for unfair competition under New York GBL § 349; and for trademark infringement and unfair competition under the common law.

9.     This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) and (b), and supplemental jurisdiction over the claims arising under the statutory and common law of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.  Furthermore, there is diversity jurisdiction as to the non-federal claims pursuant to 28 U.S.C. § 1332 to the extent the Defendants are diverse relative to Plaintiff, and because Plaintiff's damages hereunder exceed the statutory threshold.

10.     This Court has personal jurisdiction over Manhattan Home Design and Mr. Levy because they are located in this District, and because they have marketed and sold infringing product in this District.

11.     This Court has personal jurisdiction over Barcelona Designs because, upon information and belief, it is a mere extension of the infringing operations of the other two

2

defendants, without a genuine or separate corporate existence independent of Mr. Levy and Manhattan Home Design. Furthermore, upon information and belief, Barcelona Designs has sold infringing products into this District.  To the extent that Barcelona Designs were not otherwise subject to jurisdiction under any given state long arm statute, this Court would have personal jurisdiction over Barcelona Designs because of its contacts with the United States market as a whole.

12.     Venue is proper in this District under 28 U.S.C. § 1391 (b) and (c).  On information and belief, Defendants have transacted business in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PART I: BACKGROUND

### Herman Miller

13.     For over a century, Herman Miller has been a leader in the highly competitive business of designing, manufacturing, distributing, and selling high-quality, design-oriented furniture.

14.     Herman Miller is renowned for its contemporary furniture designs, which have been deemed works of art and inducted into permanent collections of major museums across the United States, including the Museum of Modern Art and LACMA in Los Angeles.

15.     Herman Miller's iconic products have generated billions of dollars in sales and are widely loved by their users.

16.     Based in Zeeland, Michigan, Herman Miller manufactures all the furniture designs asserted herein in the United States pursuant to rigorous quality controls, supporting thousands of local jobs.

17.     For decades, Herman Miller has developed close working relationships with preeminent designers, who have entrusted their design legacies to Herman Miller to protect for posterity.

18.     It is precisely because Herman Miller has intellectual property rights that it can protect the work of those designers, and enable designers to produce iconic works that stand the test of time.

19.     Herman Miller has long-established trademark rights in its own name, which is protected by multiple U.S. registrations.  Herein, Herman Miller is asserting infringement of U.S. Registration Nos. 733,770 and 772,411.  Copies of these Trademark Registrations are attached at **Exhibit A**.

## Charles and Ray Eames

20.     Two of the most notable of Herman Miller's designers were Charles Eames and his wife, Ray Eames.

21.     The creative genius of Charles and Ray Eames manifested itself in many ways, including photography, film making, architecture, and, most significantly, furniture design.

22.     Charles and Ray Eames became world-famous furniture designers and designed many of the items that comprise Herman Miller's furniture line.  Through their work, Charles and Ray Eames became celebrities. Authors have written dozens of books about them. The United States Library of Congress organized a travelling exhibit of the Eames' works in 1999.

23.     The collaboration between Herman Miller and Charles and Ray Eames is well-known in the industry and touted heavily in Herman Miller's marketing.

4845-9880-3134.4

24.     Herman Miller has used the "Eames" name, as well as the name "Charles Eames" and the name "Ray Eames," and has created an intentional association with these names as used in connection with its furniture, since at least 1951.

25.     On January 26, 1982, the United States Patent and Trademark Office formally memorialized the association between the EAMES name and Herman Miller when it issued to Herman Miller US Trademark Registration No. 1,187,673, for the EAMES® trademark. The registration provides Herman Miller with the exclusive right to use the EAMES® designation in connection with the sale of such furniture.  A copy of the registration certificate is attached as **Exhibit B**.

26.     Herman Miller has an industry-wide reputation for manufacturing and marketing the highest-quality contemporary furniture products, including being the exclusive source in North America and elsewhere for EAMES® chairs and furniture.

### The EAMES® Aluminum Group Chairs

27.     Charles and Ray Eames designed the EAMES® Aluminum Group chairs, and Herman Miller began producing them in 1958. Herman Miller has continuously produced the chairs since then.  An example of one of the EAMES® Aluminum Group chairs of the "Thin Pad" variety is depicted below:



28.    In 1969, Charles and Ray Eames added cushions to the EAMES® Aluminum Group chairs, and Herman Miller has produced them ever since. These chairs are sold as the EAMES® Soft Pad chairs, and are part of the EAMES® Aluminum Group family.  An example of one of the EAMES® Aluminum Group Soft Pad chairs is depicted below:



6

29.     Depictions of the EAMES® Aluminum Group Thin Pad and Soft Pad trade dresses are attached hereto as **Exhibit C**.

30.     Among both the Soft Pad and Thin Pad chairs, Herman Miller has sold variations with and without the distinctive parallelogram armrests (discussed further below), as well as variations with taller backrests (the Executive Chair version), and some with alternative fabrics, each of which has achieved great recognition in its own right and as part of a family of related EAMES® designs.  Exhibit C illustrates these variations.

31.     While some of these variants have been sold in greater quantity and for a longer period of time than others, each of these designs is well-known, indeed famous, as a Herman Miller original product design, all of which are associated with one another and with Herman Miller.

32.     Herman Miller possesses trade dress rights in all of these designs, as well as registered trade dress rights in the distinctive frame with armrests.

33.     The distinctive overall look of the EAMES® Aluminum Group design carries over through all the chairs – reinforced among all of them as a family of designs – and consumers can easily recognize them as mere variants of each other, just the same as consumers would recognize different model variants of the same car.

34.     Trade dress is simply the overall visual impression of what consumers see. However, set forth below are the most salient and dominant design features that distinguish the trade dress of the EAMES® Aluminum Group Thin Pad and Soft Pad trade dresses.

35.     A dominant distinguishing feature of the EAMES® Aluminum Group Thin Pad and Soft Pad trade dress is the appearance of a single, slender rectangular slab of roughly uniform thickness, that is substantially flat across its width, and that has been curved into a rounded L-

7

shape and suspended between two side rails, in the manner and style of the EAMES® Aluminum Group chairs.

36.    A further distinguishing feature of Herman Miller's Thin Pad trade dress appearing on many but not all of the chairs is the use of a web or chair surface with multiple narrow rectangular tufts.

37.    Yet another distinguishing feature of Herman Miller's EAMES® Aluminum Group trade dress appearing on many but not all of the chairs is the use of parallelogram-shaped armrests, with a thin and substantially uniform cross-section.  Although customers can also buy versions of the chairs without armrests, the armrests have historically been sold on a significant number of the chairs, and hence became a prominent distinguishing feature.

38.    Yet another distinguishing feature of Herman Miller's EAMES® Aluminum Group chairs is the use of "scroll" edges of the seat and backrest.

39.    Yet another distinguishing feature of Herman Miller's EAMES® Aluminum Group chairs is the specific cross-bar design across the back of the upper backrest.

40.    Yet another distinguishing feature of Herman Miller's EAMES® Aluminum Group chairs is a pair of visible parallel L-shaped side rails running along substantially the full length of the backrest and seat.

41.    Another distinguishing feature of the EAMES® Aluminum Group Soft Pad trade dress is the use of 2-3 uniformly shaped rectangular backrest cushions and a single seat cushion.

42.    The most visually dominant features of the trade dress as outlined above were articulated by Herman Miller recently in *Blumenthal Distributing, Inc. v Herman Miller, Inc*., C.D. Cal. Case No. 5:14-cv-01926-JAK ("Blumenthal Case"), wherein the District Court formally adopted those articulations in a ruling at Dkt. 192 of that case.  The articulations in the Blumenthal

Case not only identified the most dominant visual features of the trade dress, but also explained how infringers might combine and/or vary those features to create an infringing design that mimics the overall appearance of the EAMES® Aluminum Group Thin Pad and Soft Pad designs.

43.     Since introducing the EAMES® Aluminum Group chairs in 1958, Herman Miller has invested millions of dollars in promoting the full family of EAMES® Aluminum Group chairs.

44.     The fact that Herman Miller now sells the EAMES® Aluminum Group Thin Pad and Soft Pad chairs as part of a family of related designs reinforces the strength of the trade dress, as consumers understand the chairs to all be variations of the same design concept.  The strength and fame of any one design inures to the benefit of all of them, the same way that a convertible version of a popular car builds upon the fame of the original hardtop version.

45.     The trade dress of the EAMES® Aluminum Group chairs is unique, distinctive, and non-functional, and it is not necessary for others to use this trade dress to compete in the marketplace.  The design of the EAMES® Aluminum Group chairs is based on a general concept of suspending a web of seating upholstery between two rails, but there are an infinite variety of aesthetic design configurations that could be based on that core utilitarian concept, and the Eames couple chose the particular design of the EAMES® Aluminum Group Thin Pad and Soft Pad chairs because of their aesthetic appeal and distinctiveness.

46.     The unique and distinctive look of the trade dress of the EAMES® Aluminum Group chairs identifies and distinguishes them from competitors' chairs.

47.     The consuming public and the commercial trade have come to recognize and associate the trade dress of the EAMES® Aluminum Group chairs with Herman Miller as a result of the extensive and continuous promotion and sales of chairs over the past fifty years.

4845-9880-3134.4

48.     Herman Miller has sold hundreds of thousands of EAMES® Aluminum Group chairs, and because they are often used for communal seating (such as in conference rooms) any given chair may have been enjoyed by thousands of users over its lifetime.

49.     The EAMES® Aluminum Group chairs have also been inducted into many art museums, including the Museum of Modern Art (MoMA) in New York.

50.     The EAMES® Aluminum Group chairs are also featured ubiquitously in American media, particularly in movies and television.  In the past several years, the EAMES® Aluminum Group chairs (as well as the EAMES® Lounge Chair) have become practically synonymous with the term "mid-century modern."  The recent resurgence in popularity of mid-century modern design – driven in part by the cultural effect of the popular television show "Mad Men" – created a surge of renewed interest in the EAMES® Lounge Chairs and EAMES® Aluminum Group chairs.  That wave of renewed interest has also encouraged blatant infringement of the kind complained of in this civil action.

51.     Over the years, Herman Miller has pursued and shut down numerous infringing sales operations.  A recent example of this is the Blumenthal Case, in which a Final Judgment of infringement and dilution was entered with respect to copies of the EAMES® Aluminum Group chairs following a jury trial.

52.     EAMES® Aluminum Group chairs are recognized as "iconic" in the marketplace.

53.     Herman Miller deliberately does not license the EAMES® Aluminum Group designs, and maintains strict control over their manufacture and sale to preserve the Eames design legacy in perpetuity.

54.     With respect to Herman Miler's trade dress rights, it is not necessary that consumers know the name of a product, or that the name of the brand owner is Herman Miller.  Rather,

relevant consumers need only have a belief that the design is distinctive and originates from a single source.

55.     As a result of Herman Miller's efforts, and unsolicited media attention, the trade dress of the EAMES® Aluminum Group chairs has acquired appreciable secondary meaning, and is indeed a famous design mark, which identifies and distinguishes the chairs from chairs offered by competitors.

56.     The United States Patent and Trademark Office recognized Herman Miller's exclusive, proprietary rights in the EAMES® Aluminum Group chairs on June 20, 2006 when it issued to Herman Miller US TM Registration No. 3,105,591, covering the shape of the frame common to many of the EAMES® Aluminum Group Thin Pad and Soft Pad chairs, as depicted below:



57.     US TM Registration No. 3,105,591 is now incontestable.  The registration provides Herman Miller with the exclusive right to use the design of the EAMES® Aluminum Group chairs in connection with furniture.  A copy of the registration certificate is attached as **Exhibit D**.

11

58.    Registration of the EAMES® Aluminum Group trade dress confirms that Herman Miller owns the exclusive right to market and sell products bearing this design or any other design that is sufficiently similar thereto as to be likely to cause confusion, regardless of possible differences.

59.    As reflected by the registration, the claimed chair frame itself is sufficiently recognizable to consumers so as to be trade dress in its own right, separate and apart from the rest of the chair, much like a car's front grill shape can be protectable in its own right separate from the rest of the car.

60.    As with all of Herman Miller's trade dress registrations, registration of the EAMES® Aluminum Group trade dress gives notice to the world that this design belongs exclusively to Herman Miller.

61.    Registration of the EAMES® Aluminum Group trade dress confirms as well that the design possesses secondary meaning, shifting to anyone wishing to challenge the design the burden to prove otherwise.

62.    Registration of the EAMES® Aluminum Group trade dress confirms as well that the design is not functional, shifting to anyone wishing to challenge the design the burden to prove otherwise.

63.    As a result of Herman Miller's efforts, and unsolicited media attention, the registered EAMES® Aluminum Group trade dress has developed appreciable secondary meaning and fame as an indicator that Herman Miller is the source of goods.

64.    Herman Miller's registered and unregistered trade dress for the EAMES® Aluminum Group chairs represents highly valuable goodwill owned by Herman Miller.

65.    In addition to the trade dress, Herman Miller owns unregistered trademark rights in the name ALUMINUM GROUP, which it uses to market its EAMES® Aluminum Group chairs. The ALUMINUM GROUP mark has been used by Herman Miller consistently in promotion and sale of the EAMES® Aluminum Group line, and has become a well-known identifier of source for all the same reasons as the trade dress.

66.    Furthermore, Herman Miller owns unregistered trademark rights in the names of particular EAMES® Aluminum Group chairs. Rather than use model number designations, Herman Miller made a deliberate choice to call its individual chairs by name.  This includes the EAMES® Aluminum Group Management Chair (which is the version of the chair with armrests and a medium height backrest), the EAMES® Aluminum Group Executive Chair (which is the version of the chair with armrests and a tall backrest), the EAMES® Aluminum Group Thin Pad (which refers to the chairs with the thinner tufted upholstery), and the EAMES® Aluminum Group Soft Pad (which refers to the chairs with the thicker cushions).  The ALUMINUM GROUP MANAGEMENT CHAIR mark, the ALUMINUM GROUP EXECUTIVE CHAIR mark, the SOFT PAD mark, and the THIN PAD mark, have been used by Herman Miller consistently in promotion and sale of the EAMES® Aluminum Group line, and have become well-known identifiers of source for all the same reasons as the trade dress.

### The EAMES® Lounge Chair and Ottoman

67.    Charles and Ray Eames designed the EAMES® Lounge Chair in the early 1950s. Herman Miller began producing the product in 1956 and has continuously produced the chairs since then.

68.    An example of the EAMES® Lounge chair (with accompanying ottoman) is depicted below:

4845-9880-3134.4



69.     Further depictions of the asserted EAMES® Lounge Chair trade dress are attached hereto as **Exhibit E**.

70.     The trade dress of the EAMES® Lounge Chairs is simply the overall visual appearance of the chairs as seen by consumers.

71.     Although the trade dress of the EAMES® Lounge Chair is simply the overall visual appearance of the chairs, dominant distinguishing features as seen by consumers include the unique curvatures of both the seat and back portions (including the molded shells of the back and base of the chair with U-shaped cross-sections); the two-part backrest design, including upper and lower back panels connected by vertical supports; the deeply indented "twin-button" tufting pattern on matching cushions, including on the Ottoman; and the sweeping integration of the armrests into the base of the chair, incluidng how they curve outward from their connection to the seat base.  Pairing the char with its matching Ottomon (which bears the same twin-button tufting

4845-9880-3134.4

as the seat and U-shaped shell cross-section) only further emphasizes the association of the chair with Herman Miller because of how frequently the pair are sold together.

72.     The trade dress of the EAMES® Lounge Chair is unique, distinctive, and non-functional, and it is not necessary for others to use this trade dress to compete in the marketplace. Indeed, there are many other plywood and leather lounge chairs on the market that provide equivalent functionalities while having a distinctly different aesthetic.

73.     The unique and distinctive look of the trade dress of the EAMES® Lounge Chair identifies and distinguishes them from competitors' chairs.

74.     The consuming public and the commercial trade have come to recognize and associate the trade dress of the EAMES® Lounge Chair with Herman Miller as a result of the extensive and continuous promotion and sales of chairs over the past fifty years.

75.     Hundreds of thousands of EAMES® Lounge Chairs have been sold.  EAMES® Lounge Chairs are often kept as living room or office furniture, and as such are seen and enjoyed by countless more individuals than just their owners.

76.     The EAMES® Lounge Chair design has also been inducted into many art museums, including the Museum of Modern Art (MoMA) in New York.

77.     The EAMES® Lounge Chairs are also featured ubiquitously in American media, particularly in movies and television.  In the past several years, EAMES® Lounge Chairs (as well as the EAMES® Aluminum Group chairs) have become practically synonymous with the term "mid-century modern."  The recent resurgence in popularity of mid-century modern design – driven in part by the cultural effect of the popular television show "Mad Men" – created a surge of renewed interest in the EAMES® Lounge Chairs and EAMES® Aluminum Group chairs.  That

4845-9880-3134.4

wave of renewed interest has also encouraged blatant infringement of the kind complained of in this civil action.

78.    Over the years, Herman Miller has pursued and shut down many infringing sales operations.

79.    EAMES® Lounge Chairs are recognized as "iconic" in the marketplace.

80.    Herman Miller deliberately does not license the EAMES® Lounge Chair or Ottoman designs, and maintains strict control over their manufacture and sale to preserve the Eames design legacy in perpetuity.

81.    With respect to Herman Miler's trade dress rights, it is not necessary that consumers know the name of a product, or that the name of the brand owner is Herman Miller.  Rather, relevant consumers need only have a belief that the design is distinctive and originates from a single source.

82.    As a result of Herman Miller's efforts, and unsolicited media attention, the trade dress of the EAMES® Lounge Chair has acquired appreciable secondary meaning, and is indeed a famous design mark, which identifies and distinguishes the chairs from chairs offered by competitors.

83.    The United States Patent and Trademark Office recognized Herman Miller's exclusive, proprietary rights to the EAMES® Lounge Chair on May 20, 2003 when it issued to Herman Miller US TM Registration No. 2,716,843 covering the shape of EAMES® Lounge Chair (without an ottoman), as depicted below:

4845-9880-3134.4



84.    US TM Registration No. 2,716,843 is now incontestable.  The registration provides

Herman Miller with the exclusive right to use the design of the EAMES® Lounge Chair chairs in

connection with furniture.  A copy of the registration certificate is attached as **Exhibit F**.

85.    The United States Patent and Trademark Office also has granted Herman Miller

Registration No. 5,767,140 in the design of the EAMES® Lounge Chair Ottoman, as depicted

below.  A copy of the registration certificate is attached as **Exhibit F**.



17

86.     As with all of Herman Miller's trade dress registrations, registration of the EAMES® Lounge Chair trade dress (both the chair and ottoman) gives notice to the world that these design belongs exclusively to Herman Miller.

87.     Registration of the EAMES® Lounge Chair trade dress confirms as well that the designs possesses secondary meaning, shifting to anyone wishing to challenge the design the burden to prove otherwise.

88.     Registration of the EAMES® Lounge Chair trade dress confirms as well that the designs are not functional, shifting to anyone wishing to challenge the design the burden to prove otherwise.

89.     As a result of Herman Miller's efforts, and unsolicited media attention, the registered EAMES® Lounge Chair and Ottoman trade dress has developed appreciable secondary meaning and fame as an indicator that Herman Miller is the source of goods.

90.     Herman Miller's registered and unregistered trade dress for both the EAMES® Lounge Chair and the Ottoman represents highly valuable goodwill owned by Herman Miller.

91.     Herman Miller also owns unregistered trademark rights in the name EAMES LOUNGE CHAIR as well as EAMES LOUNGE CHAIR AND OTTOMAN, which it has used consistently for decades to identify the chairs in commerce, and which are well-known for all the same reasons that the trade dress is well-known.

**The Nelson Bench**

92.     Another prominent and highly regarded designer with whom Herman Miller worked closely for over twenty-five years was George Nelson.  His designs are displayed in the permanent collections of the Museum of Modern Art, New York, Museum of Modern Art, San Francisco, Cooper Hewitt, Smithsonian Design Museum, New York, Brooklyn Museum of Art,

and Philadelphia Museum of Art, among others, and in 1991 he received a Lifetime Achievement Award from the American Institute of Graphic Arts

93.     George Nelson designed the Nelson Bench, and Herman Miller has continuously produced, promoted and sold the seating since 1994. An example of the Nelson Bench is depicted below:



94.     Since introducing the Nelson Bench in 1994, Herman Miller has achieved considerable success selling the seating design, and Herman Miller has invested substantial sums marketing the product.  The Nelson Bench has won design awards, and is widely known in the marketplace.

95.     The Nelson Bench trade dress is unique, distinctive, and non-functional, and it is not necessary for others to use this trade dress to compete in the marketplace.  The unique and distinctive look of the Nelson Bench trade dress identifies and distinguishes the Nelson Bench from competitors' seating products.

96.     As with any trade dress, the Nelson Bench trade dress is its overall visual appearance.

4845-9880-3134.4

97.     Although the Nelson Bench trade dress is simply its overall visual appearance, among the dominant visual features that are most distinctive of the registered Nelson Bench trade dress (registration discussed and depicted below) are a long, flat rectangular bench surface having uniformly closely-spaced longitudinal slats, and supported at opposite ends by wide flat slats formed into upside-down trapezoids that serve as legs.

98.     The consuming public and the commercial trade have come to recognize and associate the Nelson Bench trade dress with Herman Miller as a result of the extensive and continuous promotion and sales of the Nelson Bench over the past twenty-five years.  As a result of these efforts, the Nelson Bench trade dress has acquired appreciable secondary meaning, which identifies and distinguishes the Nelson Bench from seating products offered by competitors.

99.     The United States Patent and Trademark Office recognized Herman Miller's exclusive, proprietary rights to the Nelson Bench on February 12, 2019, when it issued to Herman Miller US TM Registration No. 5,672,151 covering the shape of Nelson Bench, as depicted below:



100.    US TM Registration No. 5,672,151 provides Herman Miller with the exclusive right to use the design of the Nelson Bench in connection with furniture.  A copy of the registration certificate is attached as **Exhibit G**.

101.    As a result of such extensive and exclusive use and promotion of the trade dress embodied in the Nelson Bench, the trade dress has developed appreciable secondary meaning as an indicator that Herman Miller is the source of goods.

4845-9880-3134.4

102.    Herman Miller's trade dress for the Nelson Bench represents highly valuable goodwill owned by Herman Miller.

103.    Registration of the Nelson Bench trade dress confirms that Herman Miller owns the exclusive right to market and sell products bearing this design or any other design that is sufficiently similar thereto as to be likely to cause confusion, regardless of possible differences.

104.    As with all of Herman Miller's trade dress registrations, registration of the Nelson Bench trade dress gives notice to the world that this design belongs exclusively to Herman Miller.

105.    Registration of the Nelson Bench trade dress confirms as well that the design possesses secondary meaning, shifting to anyone wishing to challenge the design the burden to prove otherwise.

106.    Registration of the Nelson Bench trade dress confirms as well that the design is not functional, shifting to anyone wishing to challenge the design the burden to prove otherwise.

107.    Herman Miller also has exclusive rights to use the name NELSON BENCH to market and sell the Nelson Bench in the United States.

4845-9880-3134.4

## PART II: DEFENDANTS' WRONGFUL CONDUCT

108.    The website <<www.ManhattanHomeDesign.com>> is home to the brand "Manhattan Home Design," an E-commerce furniture company.

109.    Upon information and belief, Manhattan Home Design Furniture was created by and has been closely managed by Defendant Daniel J. Levy in New York.

110.    The website <<www.Barcelona-Designs.com>> is home to the brand "Barcelona Designs," an E-commerce furniture company.

111.    Upon information and belief, Barcelona Designs was created by and has been closely managed by Defendant Daniel J. Levy in New York, and was created to avoid the appearance of infringement in the United States by purporting to funnel product through Canada.

112.    Upon information and belief, Mr. Levy and Manhattan Home Design LLC are closely tied to the website <<www.Barcelona-Design.com>>, which, while purporting to be run as a Toronto, Canada-based company, is actually operated from New York, and directly references Manhattan Home Design on its website.

113.    Defendants have been engaged in rampant infringement and dilution of Herman Miller's valuable trade dress and trademark rights.

114.    In violation of Herman Miller's registered and unregistered trade dress rights in the Eames Aluminum Group Chair line, Defendants have marketed and sold what it calls its "Eames Office Chair Soft Pad Management Chair," its "Eames Office Chair Ribbed Management Chair," and its "Eames Office Chair Soft Pad Executive Chair," which are counterfeit copies of the EAMES® Soft Pad Management Chair, the EAMES® Thin Pad Management Chair, and the EAMES® Soft Pad Executive Chair, respectively.  Some example images of these counterfeits are shown below.

22



### Eames Office Chair | Soft Pad Management Chair

**$399.00**   Reviews ★★★★★

Select *affirm* at checkout, pay less than $3 a day

**Christmas in July**

Extra 10% Off + Free Eames Coat Rack Replica ($299 Value)

Use Code: JULYSALE - Ends in 2 Days

Items **IN STOCK - Ships in 24 hours**

QUANTITY: [ 1 ]

**Add to Cart**

This Item Ships for Free! Save $199

Ships in 1-3 business days* with **free** FedEx  Insured Delivery

**Prominent Features:**



### Eames Office Chair | Ribbed Management Chair

**$389.00**   Reviews ★★★★★

Select *affirm* at checkout, pay less than $3 a day

**Christmas in July**

Extra 10% Off + Free Eames Coat Rack Replica ($299 Value)

Use Code: JULYSALE - Ends in 2 Days

Items **IN STOCK - Ships in 24 hours**

QUANTITY: [ 1 ]

**Add to Cart**

This Item Ships for Free! Save $199

Ships in 1-3 business days* with **free** FedEx  Insured Delivery

**Prominent Features:**

4845-9880-3134.4



115.    Defendants have also marketed and sold several additional copies of the EAMES®

Aluminum Group chairs under the names "Eames Style Chair," "EM Office Chair," and "Engineer

Office Chair," and "Twist Office Chair."  Example images of these are shown below.

24



### Em Office Chair Mid Back

**$596.40**

Reviews ★★★★★

Select *affirm* at checkout, pay less than $3 a day

**Christmas in July**

Extra 10% Off + Free Eames Coat Rack Replica ($29

Use Code: JULYSALE - Ends in 2 Days

Items **IN STOCK - Ships in 24 hours**

Color: Black

QUANTITY: 1

Add to Cart

This Item Ships for Free! Save $1

Ships in 1-3 business days* with **free** FedEx  Insured



### Engineer Low Back Office Chair Espresso

**$557.00**

Reviews ★★★★★

Select **affirm** at checkout, pay less than $3 a day

**Christmas in July**

Extra 10% Off + Free Eames Coat Rack Replica ($25

Use Code: JULYSALE - Ends in 2 Days

Items **IN STOCK - Ships in 24 hours**

QUANTITY: 1    **CURRENT STOCK: 73**

**Add to Cart**

This Item Ships for Free! Save $1

Ships in 1-3 business days* with **free** FedEx  Insured



### Eames Style Office Chair

**$199.00**

Reviews ★★★★★

Select **affirm** at checkout, pay less than $3 a day

QUANTITY: 1

**Add to Cart**

This Item Ships for Free! Save $1

Ships in 1-3 business days* with **free** FedEx  Insured

26



116.    In addition to infringing upon Herman Miller's trade dress rights, Defendants have infringed upon Herman Miller's registered trademark rights in the name EAMES®, as well unregistered rights in the trade names ALUMINUM GROUP and SOFT PAD.

117.    The same counterfeit and infringing chairs are sold through Barcelona Designs, as shown below.  The EAMES® name is used in the webpage metadata, and displays in the browser tab, as also shown below.

barcelona-designs.com/products/eames-ribbed-management-chair/

4845-9880-3134.4



### Ribbed Management Chair

$ 389   $~~2394~~   | 84% OFF   SALE

★ ★ ★ ★ ★  (2 CUSTOMER REVIEWS)

**Extra 10% Off + 5 Year Warranty ($400 Value)**
**Use Code: JULYSALE**

Office Chairs are synonyms with productivity, efficiency, and elegance. Expertly
built on a five-point base and corrosion-resistant and die-cast tubular steel
columns, wrapped in premium Italian aniline leather.

Color                          Material
[ Choose an option ▾ ]         [ Italian ▾ ]        Clear

[ 1 ]          [ ADD TO CART ]

🚚 Same Day Free Shipping FedEx ($250 Value)
No tax outside of NY



barcelona-designs.com/products/eames-style-office-chair/



### Style Office Chair

$ 199   $~~999~~   | 80% OFF   SALE

★ ★ ★ ★ ★  (2 CUSTOMER REVIEWS)

**Extra 10% Off + 5 Year Warranty ($400 Value)**
**Use Code: JULYSALE**

- Supportive and Stylish design, outfitted with Expertly Crafted Premium
Synthetic Leather Upholstery
- Flexible curvature alignment of back for optimal Lumbar Support
- Soft, ribbed padding for added comfort and breathability
- Mid-Century Modern Aluminum alloy chrome frame and base – fully
finished.
- Pneumatic height adjustment mechanism with Tilt-Lock

Color
[ Black ▾ ]        Clear



barcelona-designs.com/products/eames-softpad-management-chair/

4845-9880-3134.4





118.    With respect to the EAMES® Lounge Chair and Ottoman, Manhattan Home

Design has marketed and sold counterfeit copies of both pieces under the name "Classic Lounge

Chair & Ottoman," while also using the trademarked EAMES® name elsewhere on the website and in internet advertising in connection with the chair.  Example images of these are shown below.



119.    Although, on information and belief, Defendants' chairs are all manufactured in China, Defendants have also advertised falsely that their copies of the EAMES® Lounge Chair and Ottoman use only "FAS American timber."

120.    Counterfeit copies of the EAMES® Lounge Chair and Ottoman are also sold through Barcelona Designs, as shown below.  Although the text on the website avoids using the name EAMES®, it is used in the underlying metadata of the webpage, and is visible in the browser tab.



121.    In violation of Herman Miller's registered trade dress rights in the Nelson Bench, Manhattan Home Design has counterfeit copies under the name "Nelson Bench."  An example image is shown below.



122.    Barcelona Designs sells the same counterfeits under the name "Sauna."



123.    The fact that Defendants have copied so many different Herman Miller designs and featured them as its primary products lends to an aura that Defendants are somehow affiliated with or authorized by Herman Miller, when in fact the opposite is true.

124.    Herman Miller does not yet know the exact nature of the connection between Manhattan Home Design and Barcelona Designs, but on information and belief, both were created and have been operated by Mr. Levy personally from his address at 325 West 38th Street, New York, New York 10018, and Barcelona Designs is not separately incorporated..

125.    In addition to selling infringing and counterfeit copies of Herman Miller's products, Defendants have also improperly and rampantly used Herman Miller trademarks in online advertising.  For example, below are several Google search results.  It is evident that Defendants have also purchased advertising keywords that, although not visible to consumers, redirect internet traffic to their infringing websites in an infringing manner.

4845-9880-3134.4



**Eames Lounge Chair & Ottoman...**

**$994.00**

Manhattan Hor

Special offer



**Eames Molded Plastic Side Chair Set Of ...**

**$544.00**

Manhattan Hor

Special offer



**Eames Office Chair - Soft Pad Executiv...**

**$399.00**

Manhattan Hor

Special offer



**Eames Office Chair | Ribbed Management...**

**$389.00**

manhattanhom

★★★★★ (8)



**Eames Molded Chair - White Replica sold ...**

**$236.40**

Manhattan Hor

Special offer



**Eames Office Chair - Ribbed Management...**

**$389.00**

Manhattan Hor

Special offer

Ad  www.manhattanhomedesign.com/  ▾  (646) 655-8370

**Manhattan Design Eames - Manhattan Home Design**

High Quality and Affordable High End Furniture. Large Selection of Furniture and Lighting. Spectacular Modern Designs of Mid-Century Furniture. Enjoy Deals Today! Fast delivery 1-3 day. Top Rated. Highest Quality. In Stock & Ready To Ship. BBB Accredited.

4845-9880-3134.4

manhattanhomedesign.com › classic-lounge-chair-ottoman-brown  ▾

## Eames Lounge Chair and Ottoman - Manhattan Home Design

★★★★☆  Rating: 4 - 5 votes - $1,441.00

Its designers, Charles and ray **Eames**, had originally intended to give it the look and feel of a well worn first Baseball mitt. It led to the creation of the **Manhattan** ...

manhattanhomedesign.com › eames-aluminum-group-executive-offic... ▾

## Eames Executive Chair - Eames Office Chair - Manhattan ...

★★★★★  Rating: 5 - 9 votes

Check out the **Eames** Executive Chair Replica by **Manhattan Home Design**, ... **Soft Pad** for added comfort; Strengthened **Aluminum** base for easy movements ...

manhattanhomedesign.com › eames-office-chair-soft-pad-managemen... ▾

## Eames Soft Pad Management Chair | Manhattan Home Design

★★★★★  Rating: 5 - 5 votes - $399.00

Order your **Eames Soft Pad** Management Chair from **Manhattan Home Design**. An original design by Charles and Ray Eames. In stock and ready to ship for free!

manhattanhomedesign.com › noguchi-tribecca-coffee-table  ▾

## Noguchi Table | Mid-Century Modern | Manhattan Home Design

★★★★★  Rating: 5 - 4 votes - $599.00

Shop for the Best **Noguchi** Table Replica by Isamu **Noguchi** in **Manhattan Home Design**. Available with a Tempered Glass Top and a Hand Carved Wooden ...

www.manhattanhomedesign.com › nelson-bench-eei-176  ▾

## Nelson Bench 5 - Manhattan Home Design

★★★★★  Rating: 5 - 1 vote

Find in **Manhattan Home Design** the best collection of mid-century modern furniture, lighting, and high-quality reproductions from the world's top designers.

www.barcelona-designs.com › how-is-our-eames-lounge-chair-replica...   ▼

## How is our Eames Lounge Chair made? | Barcelona Designs

Jul 24, 2019 - **Eames** Lounge Chairs and Ottoman officially titled **Eames** Lounge (670) and Ottoman (671), were released in 1956 by Charles and Ray **Eames** ...

www.barcelona-designs.com › styling-with-the-eames-lounge-chair   ▼

## Styling with the Eames Lounge Chair | Barcelona Designs

May 28, 2019 - The **Eames** lounge chair replica is a midcentury lounge chair of the highest order. No other chair from the midcentury movement has risen with ...

www.barcelona-designs.com › eames-softpad-executive-chair   ▼

## Executive Chair | FREE SHIPPING! | Barcelona Designs

★★★★☆  Rating: 4.5 · 2 reviews · $399.00 to $449.00 · In stock

Sale · Free Swatch · Home / Shop / Best Sellers, Mid Century, Office Chairs / Softpad Executive Chair. **eames** office chair replica. **EAMES** SOFTPAD EXECUTIVE ...

www.barcelona-designs.com › eames-lounge-chair-customer-gallery   ▼

## Eames Lounge Chair - Customer Gallery | Barcelona Designs

Evely Moore Next Back 1 **Eames** Lounge Chair & Ottoman Replica $1099 Inspired by Charles and Ray **Eames** Buy Now 2 Plywood Chip Chair $399 Buy Now 3 ...

www.barcelona-designs.com › product-image-13856   ▼

## Eames Aluminum Group Style Softpad Management Chair ...

Jun 20, 2019 - Telephone: 1-646-340-3033 customerservice@**barcelona-designs**.com 09:00 AM – 06:00 PM EST (Mon – Fri) Closed on National Holidays.

www.barcelona-designs.com › tag › eames-office-chair-aluminum-gr...   ▼

## Eames Office Chair Aluminum Group style Executive Chair ...

Canada, M2R 1X9 Telephone: 1-646-340-3033 customerservice@**barcelona-designs**.com 09:00 AM – 06:00 PM EST (Mon – Fri) Closed on National Holidays.

126.    Defendants' conduct is likely to cause not only point of sale confusion, but also initial interest confusion from customers who are improperly diverted to Defendants, and also post-

sale confusion from consumers who see Defendants' products in use after they have been purchased.

127.    After Herman Miller discovered Manhattan Home Design, it repeatedly placed the entity and Mr. Levy on notice of the infringements, and executed numerous takedowns of infringing content.

128.    As recently as September 13, 2019, in response to a September 3, 2019 cease and desist letter from Herman Miller, Manhattan Home Design conceded that it was removing all accused items.   However, notwithstanding these assurances, Manhattan Home Design has continued thereafter to violate Herman Miller's intellectual property rights.

129.    Upon information and belief, in an effort to evade trademark enforcement efforts and conceal their ongoing infringing conduct, Defendants have attempted to block Herman Miller's access to the portions of their websites displaying infringing content.  For example, upon information and belief, when the website detects that a user with a Herman Miller IP address is visiting the site, it redirects infringing webpages to a page stating "This product is no longer available" (as shown below).  This is willful, deceptive and misleading conduct evidencing that Defendants are aware that their actions are unlawful.



This product is no longer available

## COUNT I

## COUNTERFEITING UNDER 15 U.S.C. §1114

130.    The preceding paragraphs are incorporated herein by reference.

131.    Herman Miller asserts this claim of trademark and trade dress counterfeiting pursuant to 15 U.S.C. 1114 based upon the intentional copying of (a) Herman Miller's registered EAMES® Aluminum Group design, (b) Herman Miller's registered EAMES® Lounge Chair and Ottoman designs, (c) Herman Miller's EAMES® trademark, (d) Herman Miller's registered Nelson Bench design (collectively, the "Registrations").

132.    Herman Miller has valid and protectable rights in its Registrations.

133.    Defendants have marketed and sold products that are substantially indistinguishable from Herman Miller's registered designs.

134.    Defendants have also sold the counterfeit chairs under the name EAMES®.

135.    Defendants have no license from Herman Miller to engage in the promotion or sale of Herman Miller's designs, or the use of their trademarks.

136.    Defendants' counterfeiting is likely to cause point-of-sale confusion, initial interest confusion, and post-sale confusion, resulting in lost sales to Herman Miller, diminution in brand value, and other harms that set forth herein.

137.    Defendants' counterfeiting also dilutes Herman Miller's registered design rights.

138.    Defendants' counterfeiting has been deliberate and willful.

139.    Herman Miller is entitled to an injunction to stop the irreparable injuries caused by the counterfeiting complained of herein.

140.    Herman Miller is entitled to elect either trebled actual damages plus attorneys' fees under 15 U.S.C. §1117(b), or statutory damages under 15 U.S.C. §1117(c).

141.    Allowable statutory damages in this case for willful counterfeiting are up to $2,000,000 per registration.

142.    Mr. Levy bears individual and joint liability for this claim because, upon information and belief, he personally directed and controlled the acts complained of herein.

143.    Alternatively, Mr. Levy bears alter ego liability because he has used the corporate form as a sham to conduct a fraudulent operation, and there is otherwise no cognizable distinction between Mr. Levy and Manhattan Home Design or Barcelona Designs.

<u>**COUNT II**</u>

<u>**INFRINGEMENT OF REGISTERED HERMAN MILLER**</u>

<u>**TRADE DRESS AND EAMES® TRADEMARK UNDER 15 U.S.C. §1114**</u>

144.    The preceding paragraphs are incorporated herein by reference.

145.    Herman Miller asserts this claim of trademark and trade dress infringement pursuant to 15 U.S.C. 1114 based upon the intentional copying of (a) Herman Miller's registered EAMES® Aluminum Group design, (b) Herman Miller's registered EAMES® Lounge Chair and Ottoman designs, (c) Herman Miller's EAMES® trademark, and (d) Herman Miller's registered Nelson Bench design (collectively, the "Registrations").

146.    Herman Miller has valid and protectable rights in its Registrations.

147.    Defendants have marketed and sold chairs that are insubstantially different in visual appearance from Herman Miller's registered designs.

148.    In the case of the EAMES® Aluminum Group chairs, Defendants have also sold the accused chairs under the name EAMES®.

149.    Defendants have no license from Herman Miller to engage in the promotion or sale of Herman Miller's designs, or the use of its trademarks.

4845-9880-3134.4

150.   Defendants' copying is likely to cause point-of-sale confusion, initial interest confusion, and post-sale confusion, resulting in lost sales to Herman Miller, diminution in brand value, and other harms that have been discussed above.

151.   Defendants' copying also dilutes Herman Miller's registered design rights.

152.   Defendants' copying has been deliberate and willful.

153.   Herman Miller is entitled to an injunction to stop the irreparable injuries caused by the counterfeiting complained of herein.

154.   Herman Miller is entitled to an award of compensatory damages, and/or equitable damages for unjust enrichment.

155.   Herman Miller is also entitled to enhanced damages and attorneys' fees.

156.   Mr. Levy bears individual and joint liability for this claim because, upon information and belief, he personally directed and controlled the acts complained of herein.

157.   Alternatively, Mr. Levy bears alter ego liability because he has used the corporate form as a sham to conduct a fraudulent operation, and there is otherwise no cognizable distinction between Mr. Levy and Manhattan Home Design or Barcelona Designs.

## COUNT III

## INFRINGEMENT OF HERMAN MILLER UNREGISTERED TRADE DRESS AND TRADEMARKS UNDER 15 U.S.C. §1125(a)

158.   The preceding paragraphs are incorporated herein by reference.

159.   Herman Miller asserts this claim of infringement of its unregistered trade dress rights pursuant to 15 U.S.C. 1125(a) against the Defendants.

160.   In addition to its registration in the frame of the EAMES® Aluminum Group Management Chair, Herman Miller has unregistered trade dress rights in the overall appearance of

4845-9880-3134.4

its Thin Pad and Soft Pad lines of chairs, including the models that the Defendants have so closely copied.

161.    In addition to infringing upon Herman Miller's unregistered trade dress rights, Defendants also infringe upon Herman Miller's unregistered trademark rights in the names ALUMINUM GROUP, SOFT PAD, and EAMES LOUNGE CHAIR, and EAMES LOUNGE CHAIR AND OTTOMAN.

162.    Defendants have no license from Herman Miller to engage in the promotion or sale of the foregoing designs, or to use the foregoing trademarks.

163.    Defendants' infringement is likely to cause point-of-sale confusion, initial interest confusion, and post-sale confusion, resulting in lost sales to Herman Miller, diminution in brand value, and other harms that have been discussed above.

164.    Defendants' infringement has been deliberate and willful.

165.    Herman Miller is entitled to an injunction to stop the irreparable injuries caused by the infringement complained of herein.

166.    Herman Miller is entitled to an award of compensatory damages, and/or equitable damages for unjust enrichment.

167.    Herman Miller is also entitled to enhanced damages and attorneys' fees.

168.    Mr. Levy bears individual and joint liability for this claim because, upon information and belief, he personally directed and controlled the acts complained of herein.

169.    Alternatively, Mr. Levy bears alter ego liability because he has used the corporate form as a sham to conduct a fraudulent operation, and there is otherwise no cognizable distinction between Mr. Levy and Manhattan Home Design or Barcelona Designs.

## COUNT IV

## DILUTION OF TRADE DRESS UNDER 15 U.S.C. §1125(c)

170.     The preceding paragraphs are incorporated herein by reference.

171.     Herman Miller asserts this claim of trade dress dilution pursuant to 15 U.S.C. 1125(c) against Defendants based upon the intentional copying of Herman Miller's protected EAMES® Aluminum Group and EAMES® Lounge Chair and Ottoman trade dress.

172.     As is relevant here, Herman Miller has the following valid and protectable rights:

a.       Trademark Registrations for the design of EAMES® Aluminum Group frame and the EAMES® Lounge Chair and Ottoman.

b.       Unregistered trade dress rights in the configuration of the EAMES® Aluminum Group Thin Pad and Soft Pad chairs, including the models that Defendants have so closely copied.

173.     Defendants have no license from Herman Miller to engage in the promotion or sale of Herman Miller's designs.

174.     The registered and unregistered EAMES® Aluminum Group trade and EAMES® Lounge Chair and Ottoman are famous and widely known in the United States.

175.     Defendants' copying of the EAMES® Aluminum Group and EAMES® Lounge Chair and Ottoman designs is likely to cause dilution of the distinctiveness of Herman Miller's valuable designs, and to undermine Herman Miller's ability to control its own brand, even among consumers who know that Defendants are selling knock-offs rather than originals.

176.     Defendants' copying is likely to cause dilution of Herman Miller's brands through initial interest confusion, point-of-sale confusion, and post-sale confusion, resulting in lost sales to Herman Miller, diminution in brand value, and other harms as alleged above.

41

177.    Defendants have deliberately and willfully created a likelihood of dilution, and caused actual dilution.

178.    Herman Miller is entitled to an injunction to stop the irreparable injuries caused by the dilution and likelihood of dilution complained of herein.

179.    Herman Miller is entitled to damages in an amount to be proven at trial.

180.    Mr. Levy bears individual and joint liability for this claim because, upon information and belief, he personally directed and controlled the acts complained of herein.

181.    Alternatively, Mr. Levy bears alter ego liability because he has used the corporate form as a sham to conduct a fraudulent operation, and there is otherwise no cognizable distinction between Mr. Levy and Manhattan Home Design or Barcelona Designs.

## COUNT V

## DECEPTIVE PRACTICES AND ACTS UNDER NEW YORK GBL § 349

182.    The preceding paragraphs are incorporated herein by reference.

183.    Plaintiffs assert this claim of unfair competition pursuant to New York GBL §340 against Defendants.

184.    The same facts that state causes of action under the Lanham Act in the other claims asserted herein also state causes of action under the New York GBL § 349.

185.    Additionally, Defendants' use of Herman Miller's trademarked terms in internet advertising constitutes common law unfair competition, even when those words are not directly visible to consumers when searching the internet.

186.    Defendant's keywords have caused their internet search engine results to become intermingled with results for Herman Miller, and have resulted in potential customers getting

4845-9880-3134.4

targeted advertisements for counterfeit products.  The use of Herman Miller's own trademarks against themselves in this manner constitutes unfair competition.

187.    Defendants' conduct has been willful.

188.    Herman Miller will continue to suffer irreparable injury absent an injunction.

189.    Herman Miller seeks damages and/or restitution to the extent allowed by the Statute.

190.    Mr. Levy bears individual and joint liability for this claim because, upon information and belief, he personally directed and controlled the acts complained of herein.

191.    Alternatively, Mr. Levy bears alter ego liability because he has used the corporate form as a sham to conduct a fraudulent operation, and there is otherwise no cognizable distinction between Mr. Levy and Manhattan Home Design or Barcelona Designs.

## <u>COUNT VI</u>

## <u>COMMON LAW INFRINGEMENT / UNFAIR COMPETITION</u>

192.    The preceding paragraphs are incorporated herein by reference.

193.    The same facts that state causes of action under the Lanham Act in the other claims asserted herein also state causes of action under the common law of the State of New York.

194.    Additionally, Defendants' use of Herman Miller's trademarked terms in internet advertising constitutes common law unfair competition, even when those words are not directly visible to consumers when searching the internet.

195.    Defendants' keywords have caused their internet search engine results to become intermingled with results for Herman Miller, and have resulted in potential customers getting targeted advertisements for counterfeit products.  The use of Herman Miller's own trademarks against themselves in this manner constitutes unfair competition.

4845-9880-3134.4

196.    Defendant's conduct has been willful.

197.    Herman Miller will continue to suffer irreparable injury absent an injunction.

198.    Herman Miller seeks damages to the full extent allowed under the common law.

199.    Mr. Levy bears individual and joint liability for this claim because, upon information and belief, he personally directed and controlled the acts complained of herein.

200.    Alternatively, Mr. Levy bears alter ego liability because he has used the corporate form as a sham to conduct a fraudulent operation, and there is otherwise no cognizable distinction between Mr. Levy and Manhattan Home Design or Barcelona Designs.

## PRAYER FOR RELIEF

WHEREFORE, Herman Miller respectfully requests that the Court enter judgment as follows:

a)      Finding Defendants liable for counterfeiting, infringing and diluting Herman Miller's trade dress and trademark rights under the Lanham Act, New York law, and common law;

b)      Finding that Defendants' foregoing misconduct was willful;

c)      Enjoining Defendants, their agents, representatives, employees, assigns, and suppliers, and all persons acting in concert or privity with them, from engaging in the foregoing misconduct;

d)      Awarding Herman Miller all damages suffered and expenses incurred because of Defendants' misconduct, along with Defendants' infringing profits;

e)      Awarding Herman Miller treble damages;

f)      If Herman Miller elects statutory damages, awarding the maximum $2,000,000 per infringed registration;

g)      Declaring that this an exceptional case and awarding Herman Miller its reasonable attorneys' fees;

h)      Awarding Herman Miller pre-judgment and post-judgment interest on the damages caused by Defendants' misconduct; and

i)      Granting Herman Miller such other and further relief as the Court may deem just and proper under the circumstances.

4845-9880-3134.4

## <u>DEMAND FOR JURY TRIAL</u>

Under Rule 38 of the Federal Rules of Civil Procedure, Herman Miller requests a trial by

jury of any issues so triable by right.

Dated:  August 6, 2020                 Respectfully submitted,

By:   */s/ Jonathan E. Moskin*

Jonathan E. Moskin, NY Bar No. 1949031
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Telephone: 212.682.7474
Email: jmoskin@foley.com

Jean-Paul Ciardullo, NY Bar No. 4495594
FOLEY & LARDNER LLP
555 S. Flower St., Suite 3300
Los Angeles, CA 90071
Telephone: 213.972.4500
Email: jciardullo@foley.com

*Attorneys for Plaintiff*
*HERMAN MILLER, INC.*

4845-9880-3134.4